## W. T. Congleton Co. v. Turner et al.

(Decided June 19, 1934.)

(As Modified on Denial of Rehearing Dec. 11, 1934.)

GRANNIS BACH for appellant.

W. L. KASH for appellees Turner, Dykes and T. M. and Josie Davidson.

E. C. HYDEN for appellee Mrs. Pearl Hurst.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Under authority granted to cities of the fourth class by section 3579a-1, Kentucky Statutes, the city of Jackson by and through its city council enacted an ordinance in May, 1925, providing for the construction of a system of sanitary sewers at the exclusive cost of owners of lots abutting on streets where the sewers were laid. The ordinance provided that the sewers should be constructed on the five-year payment plan, but reserved to the owner or owners of lots subject to assessment under the ordinance the right of paying in cash the apportionment against such lots. The original ordinance provided that the assessment against any lot should not exceed $1 per front foot, but, by an amendment thereafter enacted, it was provided that the assessment should not exceed $2 per front foot.

W. T. Congleton Company, a corporation, being the lowest bidder, was awarded the contract for the construction of the sewers, and completed the work in accordance with the plans and specifications adopted and furnished by the city. Thereafter the engineer for the city made an estimate of the cost of the work

and apportioned the cost among abutting property owners liable for assessment. This estimate, showing the amount apportioned against the several abutting lots or parcels of land, was submitted to the city council on June 2, 1930. The city council caused to be published in a local newspaper a notice that the estimate and apportionment against each property owner for the construction of the sewers had been filed with the board, and that the council would meet on the 16th day of June at 7 p. m. at the regular meeting place and hold a hearing on said estimates; that any person desiring to protest against same or against anything relative to the improvement or the proceedings affecting same might make protest which would be considered and disposed of by the council.

Floyd Turner, William Dykes, Pearl Hurst, T. M. Davidson, Josie Davidson, and others refused to pay the apportionment and assessment against their property, and this action was instituted by W. T. Congleton Company, seeking to recover the sums assessed against each of them and asking that it be adjudged a prior and superior lien on the property subject to the assessments and for the enforcement of such liens. In its petition plaintiff set up the foregoing and other facts necessary to show cause of action.

By separate answer, Floyd Turner denied that the engineer apportioned the costs of the sewer construction among the abutting property owners in the way and manner provided for and set out in the ordinance, or that his lot was liable for or in lien to plaintiff for the payment of the assessment or any part thereof or that it was chargeable with the sewer tax or any part thereon.

In a second paragraph, he affirmatively alleged that his lot is several feet lower than the bottom of the sewer line located along the street upon which it abuts, and therefore the sewer is of no service to his lot or to any portion thereof, and cannot be used in connection therewith, and for that reason he is not chargeable with any of the assessment or tax against same.

By joint and separate answer, T. M. Davidson and Josie Davidson, in addition to the same general denial made by Floyd Turner, further denied that they were the owners of a lot or parcel of land fronting 200 feet on Highland avenue, between the lots of H. June Jett

and Mrs. Mollie Spencer as described in the petition, but alleged that they are the owners of 2 lots at that point, one of which is 50 feet in width and extends 250 feet. It is improved by certain buildings. This lot can be served by the sewer extending along Highland avenue on which it abuts, and they offered to pay a correct assessment against this lot. They denied that they are liable for any part of the $366.26 assessed against their property except the portion of same chargeable against the 50 foot lot; that they are the owners of another lot adjoining the above-mentioned lot which was conveyed to them by R. C. Music and which fronts 150 feet on Highland avenue and extends back 250 feet; that it is entirely below the grade of Highland avenue and that its surface is several feet lower than the low part of the sewer line, and that it cannot be served in any degree by the sewer; therefore they are not liable for any of the assessment against them; that the lot is not reasonably worth more than ———— dollars; and that they should not, in any event, be held liable for an assessment of more than half the value thereof.

The answer of William Dykes contained the same general denial as the other answers, and further averred that his lot abuts on Kentucky avenue a distance of 150 feet, but that it is only 50 feet in width, and that it fronts 50 feet on Lincoln avenue, being located on the corner of Lincoln and Kentucky avenues; that it is not liable for the assessment of $224.77 or for any other sum, for the reason that the surface of the lot is several feet lower than the surface of the sewer constructed along Kentucky avenue, and by reason thereof the sewer cannot be made of any service to the lot or any portion thereof; that the lot is unimproved, and that the value thereof is not more than $100, and therefore, if it be determined that the assessment against it was valid, it would, in no event, be liable for more than 50 per cent. of its value.

In addition to a general denial of the material allegations of the petition, Mrs. Hurst affirmatively alleged that under the provisions of the statute the estimate made after the completion of the work should have been published at least once in newspapers of the city, 10 days before the time fixed by the council for hearing complaints, but that the estimate in question was never published in a newspaper in the city; therefore the city council had no jurisdiction to levy the assessment. In

a third paragraph she alleged that the sewer constructed along Main street on which her property abutted was built many feet higher than the level of her basement and the sewer pipe leading from her residence, and is so constructed that it cannot be joined to by her or used in connection with her property, and it is no improvement thereto whatever, and that to require her to pay the assessment will amount to a taking of her property without due process of law and for no value received to her property. In a fourth paragraph she alleged that, many years before the work was undertaken by the city through the contractor, she had built and constructed at her own expense a sewer leading from and passing her property toward the Kentucky river which was and is ample for her needs and uses; that this sewer was incorporated into the system of sewers constructed by the contract, and other people have been permitted to join onto same, and it will be used as a part of the sewer system of plaintiff; that it was taken and converted into the sewer system without her consent and against her will, and she has not been paid anything therefor; that her sewer so taken was worth more than the amount attempted to be assessed and collected from her, and that, because of such taking, the city and the contractor are indebted to her for at least $150, the value thereof; that, notwithstanding that fact, and in order to save litigation, she tendered to the trustees of the city $41.17 before instituting this action in full payment and satisfaction of the assessment against her, but the city trustees refused to accept same; and she made further tender of such sum in her answer.

The issues were completed by replies and other subsequent pleadings. After hearing the evidence, the chancellor adjudged that the lot of William Dykes cannot be served with the sewer as constructed along his lot, and that so much of the petition as sought to recover a lien against the lot be dismissed and that he recover his costs. It was adjudged that the sewer in front of the property of Mrs. Hurst was not so constructed as to serve her lot and was of no benefit thereto and that she is entitled to a credit for $100 on the assessment for her sewer taken by the city; that so much of the petition as seeks to assert a lien against her lot be dismissed and she recover her costs. It was further adjudged that the sewer in front of the lot of Floyd Turner was not so constructed as to serve his lot or be

of any benefit thereto, and that so much of the petition as sought to assert a lien against his lot be dismissed and he recover his costs. It was also adjudged that the parcel of land fronting 200 feet on Highland avenue and owned by T. M. Davidson and Josie Davidson, his wife, was made up of two lots, one of which fronts 50 feet on that street and was conveyed to them by Mrs. Smoot and the other was conveyed to them by R. C. Music; that plaintiff has a valid, superior, and subsisting lien against the Smoot lot to secure the assessment and penalty amounting to $94.90; that the sewer in front of the other lot is so constructed as not to be of any service to the lot and is of no benefit thereto, and that so much of the petition as sought recovery for any greater sum than the $94.90 adjudged against the Smoot lot be dismissed. It was further adjudged that the lot owned by Davidson fronting 100 feet on Kentucky avenue was worth the sum of $125 after the sewer improvement was made, and that plaintiff had a valid, superior, and subsisting lien against the lot to secure the payment of the sum of $62.50. From so much of the judgment in the particulars recited as is adverse to the W. T. Congleton Company, it is appealing.

With reference to the lot owned by T. M. and Josie Davidson fronting 100 feet on Kentucky avenue, it is said in brief by counsel for appellant that, although the valuation of the lot as fixed by the court appears to be too low, no question is made concerning the judgment respecting that lot.

It is argued by counsel for appellant that, since appellees did not appear before the council to make any protest concerning the apportionment of costs of the work or the assessment against the lot or the way and manner in which the work was done, they waived their right to make such protest, and are now precluded and estopped from raising such question in an action to enforce the assessment. Domestic and foreign cases are cited which apparently support this contention; however, there are domestic cases pointing the other way. Under the conclusions we have reached concerning a proper disposition of this appeal, this question may be passed without further discussion.

It is further argued by counsel for appellant that the court erred in dismissing the petition asserting a lien on the lots and asking for enforcement of same on

the ground that the lots were not benefited by the sewers.

Counsel for appellees of course take a contrary view, and argue that, before an assessment can be made against a lot, it must be made to appear that it received corresponding benefits.

There is an apparent conflict of authority with respect to this question and especially concerning the extent to which an assessment against abutting property for a public improvement may be affected by the benefits or lack of benefits derived by the owner of such property. Most if not all the cases cited and relied on by counsel for appellees relate to street improvement. The charter of cities of various classes as well as the cases relating to public improvements make a distinction between the public sewers and other public improvements, such as streets and ways, as to the extent to which abutting property may be assessed.

Section 3579a-1, Kentucky Statutes, confers upon the board of council of cities of the fourth class authority to construct, reconstruct, etc., sewers, and provides that the entire cost thereof, not exceeding $2 per front foot, may be assessed against the owner of such property, and this apparently without regard to the equality or inequality of the benefits derived as between respective property owners. It further provides that, when the entire cost of construction exceeds the sum of $2 per front foot, then and in that event the total cost of construction shall be assessed against the lots in the sewer district according to the benefits received.

On the other hand, section 3563, Kentucky Statutes, relating to improvements of public ways in cities of the fourth class, provides that assessments for street improvements in excess of one-half the value of the lots subject to the assessment shall be void as to such excess. Similar distinction between classes of public improvements runs through statutes relating to cities of some of the other classes. When we come to a consideration of the benefits accruing to the individual property owners as well as to the public at large from these different classes of public improvements, it will be seen that there is substantial basis for the difference made respecting the extent to which abutting property owners may be required to contribute to the cost of the improvement. The individual property owner shares

with the public at large more of the benefits derived from improvement of streets than he does the benefits derived from a sewer under the street upon which his property abuts. Apart from the question of health and sanitation, less benefit accrues to the public generally from a sewer than does from an improved street, and a correspondingly greater direct, personal benefit, not common to the public generally, accrues to the abutting owner from a sewer.

In the case of Rich v. Woods et al., 118 Ky. 865, 82 S. W. 578, 580, 26 Ky. Law Rep. 799, the court, in upholding an apportionment and assessment against the lot of an abutting owner, among other things said:

> "That appellant's lot is unimproved, or of such grade as that at present the sewer is of no use to it, are matters wholly aside. The sewer is not only available to this lot when improved, thereby bringing it a new value for that reason, but the health and welfare of the whole city, particularly of that neighborhood, are by reason of it brought up to a higher grade, from which the lot in question will derive an additional value."

Here it is shown that some of the lots are unimproved and are of such a grade that the sewer as constructed is of no use to them in their present state; however, as pointed out in the Rich opinion, the sewer may be made available for them when they are properly improved.

It also appears that the basement of Mrs. Hurst's residence is much lower than the sewer line, but the first floor of the residence is about level with the grade of the street, it is therefore manifest that the sewer line is available to her property.

In the Rich Case it is said:

> "While all taxation must be for public purposes, and is bottomed upon the idea that it is used for the advancement of the public good, it is never required that, before a tax can be valid against a particular taxpayer, it must be shown that he derives personal benefit from it."

In the case of City of Ludlow v. Trustees of Cincinnati S. Ry. Co., 78 Ky. 357, it is indicated that, although assessments for public improvements rest upon the

basis of benefits to the property assessed, it is never essential to their validity that actual enhancement in value or other benefits accruing to the owner should be shown.

Notwithstanding these authorities and statutes indicating that the assessment may be upheld without respect to the benefits accruing to the property owner, it is apparent that all the property, when properly improved, can be served by this sewer line, and the court erred in adjudging otherwise.

No question is made that the sewers were not constructed in conformity with the plans and specifications furnished by the city, and it is not claimed that the council did not proceed in conformity with the statutes except as hereinafter indicated.

Counsel for Mrs. Hurst asserts, as was alleged in her answer, that the city council was without jurisdiction to approve the estimates and apportionment made by the city engineer and to make assessments because publication of the apportionment and assessments were not made as required by law, and counsel further contend that the publication of the apportionment and assessment served the same purpose against the property owners as does a summons in a common law action. Granting that this be true, summons in a common-law action merely gives notice of the pendency of the action and does not set forth the grounds upon which relief or recovery is sought. Previous proceedings and the publication required by law brought notice to property owners that the work would be done, and they were likewise notified by publication in the Jackson Times that the work had been completed and the apportionment of the costs had been made and that the city council would meet at the time and place indicated to hear and determine complaints and protests of any property owners. This fully complied with the requirements of the statute.

It appears in evidence that Mrs. Hurst and possibly others had constructed a private sewer line along an alley in the rear of their property and appellant extended the sewer line to the river, and she is claiming that under the provisions of section 3579a-1 of the Statutes, she is entitled to credit by the value of her private sewer thus incorporated into the sewer system constructed by appellant. This is no part of the sewer line

'for which she is being assessed and no assessment was made against the property owners for the sewer line running along the alley to the river. In such circumstances, it is apparent that she is not entitled to credit as against the assessment the alleged value of the private sewer line.

For the reasons indicated, the judgment is reversed, with directions to enter judgment in conformity with this opinion.